**WELCH, Former Collector of Internal Revenue, v. BRADLEY et al.**

**No. 3772.**

Circuit Court of Appeals, First Circuit.

July 24, 1942.

Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., for appellant.

Claude R. Branch and John Dane, Jr., both of Boston Mass., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Judgment for the plaintiff was entered in the court below in each of two actions for the recovery of income taxes alleged to have been erroneously collected for the years 1932–1935, inclusive. In one, the plaintiffs were John L. Hall and Helen Sears Bradley, as executors under the will of Sarah C. Sears. In the other, Helen Sears Bradley was plaintiff in her own right. The cases were consolidated for trial, and the two appeals by the defendant, the former Collector, were consolidated by order of this court.

By concession of the defendant the plaintiffs are entitled to refunds in respect to certain items. There remain in issue two questions: (1) whether a trust of income-producing real estate set up on December 31, 1920, by Sarah C. Sears and Helen Sears Bradley was a revocable trust within the meaning of § 166 of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int. Rev.Acts, pages 543, 727; and if so, then (2) whether the proper basis for depreciation allowance was the value of the buildings on March 1, 1913, plus the cost of improvements made thereto between 1913 and 1920, as ruled by the Commissioner, or the fair market value of the buildings on December 31, 1920, the date of acquisition by the trust, as claimed by the taxpayers. The judgments below must be sustained in full unless the district court was wrong in each of two rulings made by it, one that the trust did not fall within § 166 and, two, that in any event the value of the property on December 31, 1920, was the proper basis for computing the depreciation allowance.

We are constrained to hold that the district court was in error on both these points.

Relevant portions of the Revenue Act of 1932, 47 Stat. 169, appear in the footnote.[1] So far as the present case is concerned,

Samuel H. Levy and Frederic G. Rita, Sp. Assts. to the Atty. Gen., Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty.

---

[1] "Sec. 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

* * * * *

"(k) Depreciation. A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * * In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the

the corresponding provisions of the 1934 Act, 48 Stat. 680, are substantially the same.

. Mrs. Sears and her daughter Mrs. Bradley acquired the property as tenants in common in 1910 pursuant to the will of Mr. Sears, the interest of Mrs. Sears being an undivided two-thirds and that of Mrs. Bradley an undivided one-third. On December 31, 1920, by concurrent action,

instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

\* \* \* \* \* \*

"(m) Basis for Depreciation and Depletion. The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114.

\* \* \* \* \* \*

"Sec. 113. Adjusted Basis for Determining Gain or Loss

"(a) Basis (Unadjusted) of Property. The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \*

"(3) Transfer in Trust after December 31, 1920. If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a bequest or devise) the basis shall be the same as it would be in the hands of the grantor, increased in the amount of gain or decreased in the amount of loss recognized to the grantor upon such transfer under the law applicable to the year in which the transfer was made.

"(4) Gift or Transfer in Trust before January 1, 1921. If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition.

\* \* \*

\* \* \* \* \* \*

"(13) Property Acquired before March 1, 1913. In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection, adjusted as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis shall be such fair market value.

\* \* \*

"(b) Adjusted Basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

\* \* \* \* \* \*

"Sec. 114. Basis for Depreciation and Depletion

"(a) Basis for Depreciation. The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113(b)

for the purpose of determining the gain or loss upon the sale or other disposition of such property."

"Supplement E—Estates and Trusts

"Sec. 161. Imposition of Tax

"(a) Application of Tax. The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust \* \* \*.

"(b) Computation and Payment. The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor). \* \* \*

"Sec. 162. Net Income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(n) ) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(n), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit;

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries \* \* \* but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not.

\* \* \* \* \* \*

"Sec. 166. Revocable Trusts

"Where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

they put the property in trust, with Mrs. Sears as trustee.

■ In the trust instrument it was provided that at any time during the joint written request to the trustee or trustees written request, to the trustee or trustees thereunder, signed and acknowledged by the said grantors jointly, cause the trust to be terminated, in which event two-thirds would revert to Mrs. Sears and one-third to Mrs. Bradley, as theretofore. Upon examination of the terms of the trust, we think that neither grantor had, as against the other, a substantial interest adverse to the revocation of the trust.

The net annual income from the trust property was to be paid during the joint lives of Mrs. Sears and Mrs. Bradley, two-thirds to Mrs. Sears and one-third to Mrs. Bradley—the same proportions as prior to the creation of the trust.

Upon the death of Mrs. Sears the trustee or trustees were directed to convey two-thirds of the corpus to such person or persons as Mrs. Sears should by her last will appoint. Only in default of such appointment and in the further event that Mrs. Bradley should outlive Mrs. Sears would Mrs. Bradley stand to gain any augmented interest under the trust beyond the one-third interest she had prior to its creation. Upon the death of Mrs. Sears without exercising the power of appointment, Mrs. Bradley, if living, would then become entitled to the income from the whole of the property, and would have the right to dispose of the estate by testamentary appointment, and the right at any time to call upon the trustee for a conveyance to her of the entire corpus in termination of the trust. But Mrs. Bradley was the sole heir of Mrs. Sears, so that even if the trust were revoked, Mrs. Bradley would have a good possibility of succeeding to the whole interest upon the intestacy of Mrs. Sears. This chance was not substantially less than Mrs. Bradley's chance of succeeding to the whole interest in default of appointment by Mrs. Sears under the terms of the trust. In either case, if Mrs. Sears wanted to cut out Mrs. Bradley in respect to two-thirds of the property, she had power to do so. There is the theoretical difference that under the terms of the trust Mrs. Sears could do this only by exercising a testamentary power of appointment, whereas if the trust were revoked Mrs. Sears could transfer her two-thirds interest to a third person during her lifetime. But if Mrs. Sears should approach her daughter, Mrs. Bradley, with a proposal to join in the revocation of the trust, it seems clear that this consideration, upon any realistic appraisal, would not be regarded by Mrs. Bradley as furnishing a substantial pecuniary motive for opposing the revocation. And whatever slight pecuniary interest she might be regarded as having in the continuance of the trust is quite effectively offset by her pecuniary interest in its revocation, for in the latter event Mrs. Bradley would get back her one-third interest free and clear and might convey it to third parties during her lifetime, which she could not do during the continuance of the trust.

The stake of Mrs. Sears in the continuance of the trust was even less substantial. If Mrs. Bradley should die before Mrs. Sears, Mrs. Bradley's one-third interest would go as she should appoint in the exercise of a general testamentary power, and in default of appointment such interest would pass to her heirs at law. For Mrs. Sears thus to succeed to Mrs. Bradley's one-third interest it would be necessary that Mrs. Bradley should fail to appoint, and that Mrs. Sears should outlive her daughter, Mrs. Bradley, and Mrs. Bradley's two children. If the trust were revoked, Mrs. Sears would have about the same chance of succeeding to Mrs. Bradley's one-third interest, for Mrs. Bradley might devise it to Mrs. Sears or in a remote contingency Mrs. Sears might inherit the same upon the death of Mrs. Bradley intestate. If Mrs. Bradley should approach her mother with a proposal to revoke the trust Mrs. Sears would have no substantial pecuniary interest against revocation, and on the other hand, upon revocation, she would regain full mastery over her own two-thirds interest.

The district court [37 F.Supp. 788, 792], in reaching its conclusion that each grantor had a substantial interest adverse to revocation of the trust, made the following argument:

"Before the trust was created, Mrs. Sears

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust [for such taxable year] shall be included in computing the net income of the grantor." 26 U.S.C.A.Int.Rev. Acts, pages 491, 514, 515, 517, 518, 519, 540, 541, 543.

owned an undivided two-thirds of the property, Mrs. Bradley an undivided one-third. Neither could give a title to all the property without the other's deed unless pursuant to proceedings for partition. The trust instrument united the legal title in a single trust. The management became single. The right to sell the property was given the trustee, whoever he might be, and Mrs. Bradley could not prevent a sale of the whole property. The axiom that the whole is equal only to the sum of all its parts has little application to the valuation of undivided interests in land. Termination of the trust might well result in a substantial detriment to each of the beneficiaries."

No doubt tenants in common sometimes have disagreements as to the management of real estate, but the present record is barren of any suggestion that the trust here was created because of any such disagreement. Indeed, the implication is clearly to the contrary; for if, prior to the creation of the trust, Mrs. Sears and Mrs. Bradley were at loggerheads as to what to do with the property, it is unlikely that Mrs. Bradley would have joined in putting the property in trust under the sole trusteeship of Mrs. Sears. As the defendant says in his brief: "The trust was voluntarily entered into by the parties and it is unthinkable that mother and daughter would not have joined in a conveyance to a purchaser as readily as they joined in the trust instrument." If unified management were desired, this could be arranged without continuance of the trust by the execution of appropriate powers of attorney, either by one co-owner to the other or by both to a third person. Under the circumstances, we do not think that the suggested convenience of having the legal title in a trustee with power to act constituted, within the meaning of § 166, a substantial interest either in Mrs. Sears or in Mrs. Bradley adverse to revocation of the trust. It is clear that the bare legal interest of Mrs. Sears as trustee was not a substantial adverse interest. Morton v. Commissioner, 7 Cir., 1940, 109 F.2d 47; Treasury Regs. 86, Art. 166–1(b) (4).

We come now to the second contention made by the taxpayers, namely, that whether or not the trust is revocable within the meaning of § 166, the plain and unambiguous provision of § 113(a) (4), read in conjunction with § 23(m), § 114(a) and § 113(b), requires that the basis for depreciation shall be taken as the fair market value of the property at the time of its acquisition by the trust on December 31, 1920.

An examination of the legislative history and of other provisions of the Act, together with applicable Treasury regulations, convinces us that § 113(a) (4) cannot be read in the literal sense urged by the taxpayers.

As far back as the Revenue Act of 1916, 39 Stat. 757, 758, Congress made separate provision for the taxation of income of trust estates and estates of deceased persons. But not until 1924 did the law have any express provision dealing with the situation where the grantor reserved the power to revest in himself the title to the corpus of the trust. Nevertheless, without the aid of statute, Treasury Regs. 33 (Revised), Art. 29, under the 1916 Act, provided that a deed of trust must be "irrevocable by the donor, otherwise the income from the property in question will accrue to the donor and must be accounted for by him." Likewise, Treasury Regs. 45, Art. 341, under the 1918 Act, provided: "The income of a revocable trust must be included in the gross income of the grantor." In O.D. 621, 3 Cum.Bull. 202 (1920), it was ruled as follows: "The income of a revocable trust must be included in the gross income of the grantor. The position of the grantor with respect to the payment of tax on such income is the same as if the trust had not been created, and the same principles are applicable in determining the amount of taxable income." See, also, O.D. 676, 3 Cum.Bull. 202 (1920).[2]

In 1924 Congress expressly enacted the earlier Treasury practice of treating revocable trusts as an exception to the general provisions applicable to the taxation of income of trust estates. Section 219(b) (1) of the 1924 Act, 43 Stat. 275, 276, 26 U.S.C.A. Int.Rev.Acts, page 29, the progenitor of § 161 (b) of the 1932 and 1934 Acts, provided: "Except as otherwise provided in subdivisions (g) and (h), the tax shall be computed upon the net income of the estate or trust, and shall be paid by the

---

[2] The Treasury later repudiated these rulings, apparently on the ground that the early revenue acts did not sanction any differentiation between revocable and irrevocable trusts. L.O. 1102, 1-2 Cum. Bull. 50 (1922); I.T. 1589, II-1 Cum. Bull. 51 (1923). See the discussion in the Senate, 67 Cong.Rec. 3875–76.

fiduciary."[3] Section 219(g), 43 Stat. 277, 26 U.S.C.A. Int.Rev.Acts, page 30, the progenitor of § 166 of the 1932 and 1934 Acts, provided that in the case of revocable trusts, "the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor."[4] Thus it appears that in the 1924 Act, as had been the earlier Treasury practice, the general provisions requiring the tax to be computed upon the net income of the trust as a separate taxable entity were made inapplicable to revocable trusts. At the same time, in § 204(a) (4) of the 1924 Act, 43 Stat. 258, 26 U.S.C.A. Int. Rev. Acts, page 7, Congress introduced into the law the same provision that later appeared in § 113(a) (4) of the 1932 and 1934 Acts, upon which the taxpayers here place their chief reliance.

On the face of § 219(g) of the 1924 Act, it might be considered that there was an ambiguity in the provision that in the case of revocable trusts, "the income" of the trust "shall be included in computing the net income of the grantor". Did Congress mean by "the income" of the trust (1) the taxable net income of the trust, computed on the basis of considering the trust a separate entity, or (2) the gross income derived from the trust property determined by the criteria of the tax laws as if the trust had not been created? From the very beginning the Treasury has adopted the second interpretation, consistent with its earlier rulings before Congress had dealt specifically with revocable trusts. In Treasury Regs. 65, Art. 347–1, promulgated under the 1924 Act, it was stated: "Where the grantor of the trust has, at any time during the taxable year, either alone or in conjunction with a person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, the income of such part of the trust for the taxable year shall be included in computing the net income of the grantor. *The grantor shall include in his income the entire gross income of such part of the trust, and shall be entitled to such deductions with reference to such income as he would have been entitled to if the trust had not been created."* (Italics ours.)

Shortly thereafter, in I.T. 2172, IV–1 Cum.Bull. 44 (1925), applying Art. 347 of Regs. 65, it was ruled: "The grantor of a voluntary revocable trust should amalgamate the income of such trust with his other individual income and report the same as if the trust had never been created. Capital gains or losses should be treated as capital gains and losses of the individual grantor and shown on the individual return amalgamated with his other individual income."

Again, in I.T. 2204, IV–2 Cum.Bull. 65, 66 (1925), it was ruled: "Upon the facts presented, it is held that the trust in question comes within the provisions quoted above [§ 219(g) and Art. 347 of Regs. 65], and consequently the settlor, A, should include in his income the entire gross income of the trust. However, A will be entitled to such deductions with reference to the income of the trust as he would have been had the trust never been created."

Such was the Treasury's contemporaneous interpretation of § 219(g) of the 1924 Act. This interpretation has been consistently adhered to under the corresponding sections of the succeeding revenue acts. See Regs. 69, Art. 347–1 (1926 Act); Regs. 74, Art. 881–1 (1928 Act); Regs. 77, Art. 881–1 (1932 Act); Regs. 86, Art. 166–1 (1934 Act). The last mentioned regulation reads:

"Article 166–1.

" * * *

"(c) Income and Deductions.—If, as to any of the corpus, the test of taxability to the grantor is satisfied, the gross income of such corpus shall be included in the gross income of the grantor, and he shall be allowed those deductions with respect to such corpus as he would have been entitled to had the trust not been created."

In the face of this contemporaneous interpretation by the Treasury, consistently adhered to over a long period of years, the repeated reenactment of the section dealing with revocable trusts, with no change, so far as the present point is concerned, is persuasive indication that the Treasury interpretation coincides with the inten-

---

3 Though the phraseology is reversed in § 161 (b) of the 1932 and 1934 Acts, there is nothing in the legislative history to indicate that § 161 (b) was intended to have any different effect.

4 In the Senate committee report explaining the new § 219(g), it was said: "The creation of a revocable trust constitutes nothing but an assignment of the right to receive future income. Since such an assignment does not operate to increase the taxable income of the assignor [assignee?] the creation of a revocable trust should not so operate but the income of such a trust should be included in the income of the grantor."

tion of Congress.[5] We so hold. See Griswold, "A Summary of the Regulations Problem", 54 Harv.L.Rev. 398, 404–411 (1941); and Griswold, "Postscriptum", id. p. 1323.

If the argument were accepted that the grantor of a revocable trust is taxable only on the *net* income of the trust computed as provided in § 162 on the basis that the trust is a separate taxable unit, then a consequence would follow, in respect to the deduction for charitable contributions, that could hardly have been intended by Congress. Suppose all of the trust income, after the payment of expenses, were applied for charitable purposes. By the provision of § 162(a), all of such charitable contributions would be deducted in computing the net income of the trust, so that there would be nothing left on which the grantor would be taxable. One may doubt whether the grantor of a revocable trust could thus escape the provision in § 23(n) of the 1932 Act, 47 Stat. 181–182, 26 U.S.C.A. Int.Rev.Acts, page 491 or § 23(*o*) of the 1934 Act, 48 Stat. 690, 26 U.S.C.A. Int.Rev.Acts, page 674, limiting the individual deduction for charitable contributions to 15% of the taxpayer's net income. See Drexler v. Commissioner, 1932, 25 B.T.A. 79.

It is somewhat surprising that there is such a dearth of decided cases on the point. Coursey v. Commissioner, 1936, 33 B.T.A. 1068, 1072, relied on by the taxpayers, did not involve a question of deductions, and possibly is distinguishable. We cannot accept its reasoning, which is inconsistent with the conclusion we have reached. Cf. Silverthau v. United States, D.C.Conn., 1938, 26 F.Supp. 242.

We confine our decision to revocable trusts covered by § 166. There is no occasion to consider whether the same rule applies when the grantor of a trust is taxable under § 167, 26 U.S.C.A. Int.Rev.Acts,

pages 543, 727; or under § 22(a), 26 U.S.C.A. Int.Rev.Acts, pages 487, 669, in cases like Douglas v. Willcuts, 1935, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, or Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

The judgments of the District Court are vacated, and the cases are remanded to that court for further proceedings not inconsistent with this opinion.

Sen.Rep. No. 398, 68th Cong., 1st Sess., p. 25.

[5] When the 1926 Act was pending, there was considerable discussion in the Senate of the status of revocable trusts. Senator Willis stated on the floor of the Senate:

"Up until April of 1923 the department had always ruled and held that the income of a revocable trust should be included in the gross income of the grantor and that such a trust, being revocable, should be disregarded for income-tax purposes. It was recognized that such was a fair way of handling the situation, and

taxpayers returned all income, gains, and losses from or relating to property so deposited as though no trust existed * * *

"It was the policy of the department, *as it is now the law* [italics ours], that a revocable trust should be treated for income-tax purposes just as if no trust existed; that is to say, the person who made the trust should account for the income in his income-tax return. That was the ruling of the department for a number of years and it is now a provision of the law." 67 Cong.Rec. 3875.