## COCHRAN v. UNITED STATES.

No. 45425.

Court of Claims.

Nov. 5, 1945.

Plaintiff sues to recover $898.20, with interest, as an overpayment of income tax for 1934, on account of a loss sustained in that year through certain stock, for which he had paid $10,000, becoming worthless in 1934. It is admitted that the stock did become worthless in 1934. The defenses are (1) that plaintiff did not file a sufficient timely claim for refund; (2) that plaintiff may not deduct any portion of the stock loss from his individual income since the stock in question had been transferred prior to 1934 to a trust which was irrevocable by plaintiff acting alone and was held by such trust during 1934; and (3) if plaintiff is entitled to a deduction on account of the worthless stock his deduction must be limited to $5,000 since his wife was designated as a grantor and was an equal beneficiary of the trust income and, also, of the corpus in event of a joint written revocation.

### Special Findings of Fact

### Filing of Refund Claim

1. Plaintiff, now a resident of New York, was in 1934 a resident of Maryland but had his office in the District of Columbia. He filed his individual income tax return for the calendar year 1934 on March 15, 1935, and paid the tax of $884.88 shown therein in four equal installments of $221.-22 on March 15, June 15, September 20, and December 17, 1935. This was not a joint return of plaintiff and his wife. An additional tax of $114.08, with $6.94 interest thereon, was assessed against plaintiff in March 1936 and he paid the total of $121.-02 on March 12, 1936.

2. Plaintiff filed with the collector, at his Washington office, a claim for refund of "$1.00, more or less," for 1934 on March 14, 1938, stating the following grounds or reasons for an overpayment:

"My books are being audited, my trusted bookkeeper of several years having left my employ, and there are indications that there may have been gross irregularities; and losses not claimed. I will furnish the exact data when the audit is complete. In addition, I claim losses through embezzlement, fraud, and false pretenses; and for fees paid."

A signed and verified duplicate copy of this claim was filed with the Commissioner.

This claim covered and was intended to cover business losses and losses sustained in transactions entered into for profit, "in addition" to losses "through embezzlement, fraud, and false pretenses, and fees paid." Due to the fact, as stated in the claim, that plaintiff's books and records were then be-

ing audited, the facts upon which the losses mentioned and the reasons therefor were not stated. This claim was timely. No action allowing or disallowing this claim was taken by the Commissioner before or after it was amended.

During the morning of March 15, 1938, the plaintiff at New York City wrote and mailed a letter to the Commissioner of Internal Revenue, and a duplicate thereof to the Collector of Internal Revenue at Baltimore, Maryland, both of which letters had been subscribed and sworn to by plaintiff before a notary public at New York City, N. Y. The letters were in the form of an amendment, and stated that plaintiff desired to amend his claims for refund filed for 1934 and 1936 by claiming therein that certain stock which he owned in W. B. Moses & Sons, Inc., became worthless in either the year 1934 or 1936. Both letters were registered in New York City on March 15, 1938, and were sent by air mail, special delivery. The letter to the collector does not show the date on which it was received by him. The letter to the Commissioner does not show the date on which it was received by his office but shows only the receipt stamp of the collector at Baltimore, Md., dated March 23, 1938. This letter to the Commissioner was received by him and was later sent to the collector to whom the claim of March 14, 1938, was also sent by the collector's Washington office, and was received thereon the same date as the letter, to-wit, March 23, 1938.

Plaintiff's claim for refund as originally made and as amended has never been officially rejected by the Commissioner of Internal Revenue. The record does not show that the Commissioner or the collector actually received the amendment to plaintiff's refund claim on March 15, 1938; neither is there any evidence that they did not receive the letters on the 15th. The letters were, however, received by the Commissioner and the collector in due course of mail and the Commissioner sent his copy and the claim to the collector at Baltimore. Later J. C. Wilmer, the Revenue Agent at Baltimore, caused an examination to be made of plaintiff's books and accounts in connection with the refund claim as amended. As a result of this investigation the agent determined and recommended to the Commissioner in a written audit report the allowance of the claimed loss of $10,000 on the W. B. Moses & Sons, Inc., stock, upon the ground

that said stock had become worthless during 1934, and so notified plaintiff by letter dated October 12, 1938.

Notwithstanding the finding and recommendation of the agent, the Commissioner did not allow or deny the loss, and the plaintiff's claim for refund, in the amount of $898.20, with interest, has not been paid.

### Creation of a Trust

3. In October 1924 plaintiff purchased 100 shares, par value of $100 a share, of the preferred capital stock of W. B. Moses & Sons, Inc., for which he paid $10,000 from his personal funds.

4. On February 10, 1925, plaintiff and his wife, Esther H. Cochran, as grantors, entered into a trust agreement with the National Savings & Trust Company as trustee. The 100 shares of preferred stock of W. B. Moses & Sons, Inc., were conveyed to the trustee as part of the trust property. A new stock certificate for the 100 shares was issued March 17, 1925, and was in the name of "National Savings & Trust Co., Trustee, under agreement with Howe P. Cochran and Esther H. Cochran dated February 10, 1925." The trust instrument provided that the trustee was to pay the income to the joint designee or designees of the grantors or, failing designation, to the grantors equally. In the event either one of the grantors predeceased the other during the life of the trust, the trustee was to pay the income of the deceased to the surviving grantor for the remainder of his or her life, or to the appointee of the survivor for the same period. The trust was to cease at the death of the survivor, at which time the trustee was to convey the corpus, plus accumulated income, to the issue of the grantors. The trust was subject to revocation upon joint written notice of the grantors to the trustee, otherwise it was to be irrevocable. Upon revocation, the trustee was to convey the entire trust estate to the grantors equally.

The 100 shares of preferred capital stock of W. B. Moses & Sons, Inc., remained a part of the corpus of the trust until the final revocation of the entire trust on August 23, 1938.

All money and properties conveyed to the trustee were the money and properties of plaintiff, Howe P. Cochran; all the income of the trust was taxed to plaintiff and all the expenses of the trust were claimed and allowed to plaintiff as deductions on his income tax returns.

### Worthlessness of Stock

5. W. B. Moses & Sons, Inc., for many years conducted a furniture store on F Street in the City of Washington. During 1925 W. B. Moses & Sons, Inc., converted its business from that of a furniture store to that of a department store. It owned the building in which its store was operated and also a warehouse building on Rhode Island Avenue. The former building was subject to a mortgage of $850,000 and the latter to a mortgage of $25,000.

In 1929 or 1930 W. B. Moses & Sons, Inc., was in financial difficulties due to the depression, and by 1932 these difficulties had increased to such an extent that a creditors' committee took charge of its affairs. The business was operated under the control of this committee until the store was finally and permanently closed on June 15, 1935, the stockholders receiving nothing in the liquidation of the corporation.

6. The store building, warehouse building, and the land appeared on the balance sheet page of the income and profits tax return of W. B. Moses & Sons, Inc., for 1934 as having, on January 1, 1934, an undepreciated value of $1,444,682.61, subject to mortgages totalling $963,664.77. This balance sheet page showed machinery and equipment as of January 1, 1934, at $13,753.62; furniture and fixtures at $114,315.90; and delivery equipment at $15,963.84. Accrued depreciation on all these assets as of January 1, 1934, was shown as $252,477.76. The capital stock outstanding was shown as $860,000 (of which $360,000 was preferred and $500,000 common) and the deficit as of January 1, 1934, was shown to be $606,778.34. The tax return showed a net loss of $86,342.31 for 1934.

The balance sheet page of the tax return also showed total assets as of December 31, 1934, of $259,163.88; liabilities of $119,192.34; common capital stock of $100,000, and a surplus of $39,971.54. It did not, however, disclose the facts that during 1934 the mortgages were foreclosed, that the mortgagees bid in the properties and took deficiency judgments of approximately $260,000 (although they made no efforts to recover on the deficiency judgments during 1934), or the fact that by amendment to the charter during 1934 all capital stock was cancelled, the preferred stockholders receiving one share of new common stock in exchange for five shares of preferred stock and the common stockholders receiving nothing.

7. Stock in W. B. Moses & Sons, Inc., for which plaintiff paid $10,000 in 1924, became badly depreciated in value by January 1, 1934, and became entirely worthless by December 31, 1934.

Howe P. Cochran, of Washington, D. C., per se.

H. S. Fessenden, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff sues to recover an overpayment of individual income tax for 1934, on the ground that he was entitled to a deduction in that year which was not shown on his return, of $10,000 as a loss sustained as a result of certain stock for which he had paid, that amount becoming worthless in 1934. The evidence shows and it is admitted that plaintiff paid $10,000 for the stock in question and that this stock did become worthless in 1934 (finding 7).

Defendant first contends that the court is without jurisdiction of the case, because the refund claim filed in time on March 14, 1938 (finding 2), did not specifically claim this stock loss and the language or grounds of the claim were not sufficient to cover it, and that it has not been shown that the amendment of the claim mailed at New York on March 15, 1938 (finding 2), was received within the statutory period for filing a claim for 1934. It is insisted by the defendant that the claim filed March 14 was not susceptible of amendment after March 15, and that the attempted amendment, although adequate as a claim, came too late to be effective.

We think the claim as amended for refund was sufficient and that the court has jurisdiction. The claim of March 14 was defective in that it did not set forth in the ground stated the nature of the losses sustained and not claimed on the return, which is shown to have been "in addition" to the losses "through embezzlement, fraud, and false pretenses; and for fees not paid;" nor did this claim set forth the facts relied on to support the claim. However, a broad statutory ground was stated for "losses not claimed." The claim also stated that the

books were in process of audit and that "I will furnish the exact data when the audit is completed." Plaintiff had in his records various data concerning the W. B. Moses & Sons, Inc., stock. In these circumstances we think the claim was properly susceptible of amendment in the way and to the extent which plaintiff did amend it by the verified statement of the specific loss and the pertinent facts relative thereto. United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619. See also, Angelus Milling Co. v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162. The Commissioner of Internal Revenue made no objection to the claim as amended, but had an investigation and audit made of the grounds and facts alleged which showed that the claim that the stock became worthless in 1934 was correct. No new ground for refund was stated in plaintiff's amendment; the informal or imperfect statutory ground of "losses not claimed," stated in the timely claim, was perfected and made specific and certain by the amendment, which, if it was permissible, is admitted to have been otherwise sufficient. We are of opinion that in the circumstances the amendment was permissible even if it was received after the 15th. For this reason the case of United States v. Andrews, Executrix, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398, is not in point. In that case a new ground was stated in an amendment which ground had not been in any way included in the claim timely filed. In view of our conclusion it is not necessary to discuss the matter of whether the amendment actually reached the Commissioner or the collector on March 15, although it would seem that it probably was so received.

■ With reference to the claimed deduction of $10,000 on account of the 100 shares of stock of W. B. Moses & Sons, Inc., becoming worthless in 1934, we are of opinion on the facts and under the terms of the trust of 1925 and the provisions of sec. 166 (2), Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Code, § 166(2), that plaintiff is entitled to a deduction of one-half, or $5,000, of this loss from his individual income for 1934. The W. B. Moses stock and all other property constituting the corpus of the trust created in 1925 were theretofore acquired by and were the property of plaintiff. Plaintiff and his wife were designated as the grantors in the trust agreement with the National Savings &

Trust Co., as trustee (finding 4). The wife contributed no property or funds to the trust. The grantors were equal beneficiaries of the income of the trust, since they had not by joint action designated any other beneficiary. The trust was revocable upon joint written notice by the grantors, otherwise it was to be irrevocable. The trust instrument provided that in the event of revocation the trustee would convey the entire trust estate to the grantors equally.

Upon creation of the trust, although legal title was in the trustee, plaintiff's wife became a beneficiary of one-half of the income and a beneficial owner of one-half of the property of the trust, and plaintiff had only a one-half beneficial interest. Sec. 166, Revenue Act of 1934, provides as follows:

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

Under the rule stated and applied in the cases of Crossett v. United States, 30 F. Supp. 802, 90 Ct.Cl. 212, 220–222, plaintiff's wife, being an equal beneficiary and having an equal interest in the corpus, did not have a substantial adverse interest against revocation of the trust. See Heller v. Commissioner of Internal Revenue, 41 B.T.A. 1020, and Buhl v. Commissioner of Internal Revenue, 45 B.T.A. 274, 277, 278. Plaintiff says that since he owned and contributed to the trust all the trust property he should be allowed a deduction for the entire loss of $10,000. But he was not the beneficial owner of the 100 shares of stock in 1934, he only had a one-half beneficial interest therein, and his return for 1934 was not a joint return of himself and wife.

The trust was a revocable trust, and plaintiff and his wife as equal beneficiaries and equal distributees of the corpus in event of revocation were taxable on one-half of the income and, likewise, entitled to a deduction of one-half of the loss in question. Welch v. Bradley et al., 1 Cir., 130 F.2d 109, 143 A.L.R. 1108.

Judgment will be entered in favor of plaintiff upon the filing of a stipulation showing the amount with interest due him in accordance with the findings and this opinion from the appropriate dates of payments stated in finding 1.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER, Judge, concur.

MADDEN and JONES, Judges, took no part in the decision of this case.