JONES, Collector of Internal Revenue, v.
FIRST NAT. BLDG. CORPORATION.

No. 3245.

Circuit Court of Appeals, Tenth Circuit.

May 15, 1946.

HUXMAN, Circuit Judge, dissenting.

Lester L. Gibson, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss, Sp. Asst. to Atty. Gen., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellant.

Earl Pruet, of Oklahoma City, Okl. (Frank Chilson and Richardson, Shartel, Cochran & Pruet, all of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from a judgment on claims for refund of surtaxes on undistributed profits taxes for the years 1936 and 1937.

First National Building Corporation[1] was incorporated under the laws of Delaware in 1930 for the sole purpose of erecting, owning, and operating the First National Building in Oklahoma City, Oklahoma. At all times here material, it had outstanding 57,463 shares of no par value common stock which had been issued for $574,630, and 8,209 shares of preferred stock of the par value of $100 per share, which had been issued for $820,900. All of such stock was issued and paid for in cash in 1933 and years prior thereto.

The Building Corporation Articles of Incorporation provide: "The holders of the preferred stock * * * shall be entitled to receive dividends at the rate of six and one-half (6½) per cent per annum, and no more, *payable out of the surplus of the corporation semi-annually,* as and when declared and set apart by the Board of Directors. The dividends on the preferred stock shall be cumulative and shall be payable before any dividends on the common stock shall be paid or set apart, so that if in any year dividends amounting to six and one-half (6½) per cent shall not have been paid thereon, the deficiency shall be payable *as and when the Corporation shall have a surplus available therefor before any dividends shall be paid upon or set apart for the common stock."* (Italics ours.)

Sections 2066 and 2067 of the Revised Code of Delaware (1935), Ch. 65, §§ 34 and 35 in part provide:

"34. The directors of every corporation created under this Chapter, *subject to any restrictions contained in its Certificate of Incorporation,* shall have power to declare and pay dividends upon the shares of its capital stock. * * * (Italics ours.)

"35. No corporation created under the provisions of this Chapter, nor the Directors thereof, shall pay dividends upon any shares of the corporation except in accordance with the provisions of this Chapter, * * *."

Section 2046 of the Revised Code of Delaware (1935), Ch. 65, § 14, in part provides: "If the Board of Directors shall not have determined (a) *at the time of issue* of any shares of the capital stock of the corporation issued for cash * * * what part of the consideration for such shares shall be capital, the *capital* of the corporation in respect of such shares shall be an amount equal to the aggregate par value of such shares having a par value, plus the amount of the consideration for such shares without par value." (Italics ours.)

The Building Corporation had an operating deficit at the end of 1935 of $87,707.88, at the end of 1936 of $78,348.84, and at the end of 1937 of $45,115.98.

On December 27, 1935, the Building Corporation, after all of its outstanding stock had been issued for cash, undertook to set up on its books $568,885.70 of its paid-in capital as a surplus.

In its income tax return for 1934, the Building Corporation showed a gross income of $394,543.35, deductions of $393,421.50, and a net income of $1,121.85. In such return, it estimated the life of its building at 40 years and claimed depreciation on the basis of 2½ per cent per annum. The Commissioner, on redetermination, estimated the life of the building at

---

[1] Hereinafter called the Building Corporation.

66-2/3 years, fixed the rate of depreciation at 1½ per cent per annum, and made a deficiency assessment accordingly. The Building Corporation paid the additional tax under protest and filed a claim for refund, which was denied. It then brought an action, numbered 6534 in the court below, on the claim for refund, and on March 1, 1941, recovered a judgment on its claim. In its return for the years 1935 to 1940, inclusive, the Building Corporation claimed depreciation at the rate of 2½ per cent per annum. On redetermination, the Commissioner fixed the rate of depreciation at 1½ per cent per annum and assessed deficiencies accordingly. The Building Corporation paid the additional taxes under protest, and filed claims for refund.

Thereafter, the Building Corporation brought three actions in the court below, one on the claims for refund for the years 1935, 1936, and 1937, one on the claim for refund for the year 1938, and one on the claims for refunds for the years 1939 and 1940.

The sole issue in each of the several actions brought on claims for refund was the life of the building and the rate of depreciation. While an appeal was pending from the judgment in 6534, and the other actions were pending, a settlement was reached under which the Building Corporation agreed to accept refunds for the years 1934 to 1940, inclusive, based on a rate of depreciation of 2-1/4 per cent per annum, and for the dismissal of the appeal and the several actions.[2]

In its returns for 1936 and 1937, the Building Corporation reported undistributed profits taxable under the provisions of § 14 of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, page 823, and paid the surtax thereon.

Section 501 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, page 344, provided for additional credits on undistributed profits surtaxes.[3]

After the enactment of § 501 of the Revenue Act of 1942, the Building Corporation timely filed claims for refund of surtaxes paid on undistributed profits for the years 1936 and 1937, on Form 843 (revised April,

[2] The stipulation filed in No. 6534 in part read:
"1. That the parties hereto have entered into a settlement agreement involving this action and the income tax of the plaintiff for the years 1934 to 1940, inclusive. * * *
"3. That pursuant to said settlement agreement the plaintiff herein accepts refund for the calendar years 1934, 1935, 1936, 1937, 1938, 1939 and 1940, based on a rate depreciation of 2¼ per cent per annum, for the building proper, together with interest on all overpayments made by it and refunded at the rate of interest provided for in Section 284 of Title 28, U.S.Code, as amended [28 U.S. C.A. § 284].
[3] Sec. 501(a)(2) provides:
"Deficit corporations. In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."
Sec. 501(c) provides:
"If the refund or credit of any overpayment for any taxable year, to the extent resulting from the application of this section, is prevented on the date of the enactment of this Act or within one year from such date, then, notwithstanding any other provision of law or rule of law (other than this subsection and other than section 3761[4] of the Internal Revenue
[4] Sec. 3761(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3761 (a), provides:
"Authorization. The Commissioner, with the approval of the Secretary, or of the Under Secretary of the Treasury, or of an Assistant Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General may compromise any such case after reference to the Department of Justice for prosecution or defense. * * *"
Code or section 3229 of the Revised Statutes, or such section as amended by section 815 of the Revenue Act of 1938, relating to compromises), such overpayment shall be refunded or credited in the same manner as in the case of an income tax erroneously collected under the Revenue Act of 1936, if claim therefor is filed within one year from the date of the enactment of this Act."

1940), based on the relief provisions of § 501, supra. In the claims as originally filed, the Building Corporation stated it was prohibited from paying dividends because of an oral agreement with the First National Bank and Trust Company, Oklahoma City, Oklahoma, entered into prior to 1936 at the order of the National Bank Examiners.

After October 21, 1943, the Building Corporation filed supplemental claims for refund under § 501, in which it set up that it was prohibited from paying dividends by the order of the National Bank Examiners and the statutes and decisions of the State of Delaware.

The Commissioner considered the original and supplemental claims and denied them. The Building Corporation then brought this action on the claims.

■ A compromise is a contract and it is subject to judicial interpretation in the light of the language used and the circumstances surrounding its making.[5]

■ Here, there was a settlement of civil cases, wherein there were involved claims for refund of income taxes arising out of a dispute as to the life of the building and the rate of depreciation. No other issue was presented, considered, or settled. No dispute then existed as to surtaxes on undistributed profits, and had the relief provisions of § 501 not been enacted, none would have ever arisen. It is clear that the parties had no intention to deal with or settle liability for surtaxes on undistributed profits, and we are of the opinion that the compromises foreclosed neither the Commissioner nor the Building Corporation with respect to the latter's liability for such surtaxes.

Since there had been no compromise of the Building Corporation's surtax liability on undistributed profits, we are of the opinion the exception in § 501(c) has no application.

■ The original claims sought refunds of surtaxes on undistributed profits under the provisions of § 501, supra, on the ground the Building Corporation was a deficit corporation and was prohibited from paying dividends during the taxable years. The supplemental claims sought refunds under § 501, supra, of the same surtaxes on the same ground and stated additional facts which prevented it from paying dividends in those years. The same claims, not different claims, were asserted in the original and supplemental claims for refund. Both the original and supplemental claims were considered and acted on by the Commissioner. It follows that the supplemental claims related back to the date of the filing of the original claims, and the latter are not barred by limitation.[6]

■ The action of the Building Corporation in 1935, in setting up on its books a surplus out of paid-in capital, was impliedly prohibited by § 2046 of the Revised Code of Delaware and was wholly abortive.

■ The Building Corporation was expressly prohibited by §§ 2066 and 2067 of the Revised Code of Delaware from declaring and paying dividends in contravention of its certificate of incorporation. In effect, the provisions of the charter were, by reference, incorporated into § 34, supra.[7] It was a deficit corporation in 1936 and 1937, under the provisions of its charter, and, therefore, under the statutory law of Delaware, it was prohibited from paying dividends on either its common or preferred stock in those years.[8]

It follows that the Building Corporation was entitled to the additional credit provided for by § 501, supra, and the judgment is, therefore, affirmed.

[5] Big Diamond Mills Co. v. United States, 8 Cir., 51 F.2d 721, 724.

[6] Seaboard Air Line Railway v. Renn, 241 U.S. 290, 293, 36 S.Ct. 567, 60 L.Ed. 1003; Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 71 L.Ed. 1069; Vinson v. Graham, 10 Cir., 44 F.2d 772, 777; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 70, 71, 53 S.Ct. 278, 77 L.Ed. 619; Cochran v. United States, Ct.Cl., 62 F.Supp. 872.

[7] Scottish Union & National Ins. Co. v. Phoenix Title & Trust Co., 28 Ariz. 22, 235 P. 137, 138, 139; Engel v. Davenport, 271 U.S. 33, 38, 46 S.Ct. 410, 70 L.Ed. 813; Ex parte Burke, 190 Cal. 326, 212 P. 193.

[8] Cf. Helvering v. Northwest Steel Mills, 311 U.S. 46, 51, 52, 61 S.Ct. 109, 85 L. Ed. 29.

HUXMAN, Circuit Judge (dissenting).

My disagreement with the majority arises over the interpretation to be placed on the exceptions in Section 501(c), which bars the right to the refund of undistributed profits taxes authorized by the 1942 Act. The precise question is, what compromises did Congress have in mind as barring a right to the refund when it said that the refund should be granted notwithstanding any other provision of law or rule of law except, however, those sections of the law "relating to compromises." The majority holds that to bar a recovery the compromise must have been related to surtax liability on undistributed profits, and that since the compromise in question was not of that nature, it is no bar to the right to the refund. With this, I cannot agree. Why would Congress intend to deny the right to the refund of undistributed profits taxes merely because the taxpayer had been in dispute with the government only as to the amount of such taxes? The reason Congress passed the refund law of 1942 was that under the original Act in some instances a tax was collected on undistributed profits when the taxpayer was prevented from distributing such profits. Congress was of the opinion that in such instances no tax should have been collected, and that therefore such tax should be refunded. But, under the theory of the majority, if a taxpayer, without protest, paid the entire amount of such a demand he now could have it back, but if after a protest, an agreement was reached by which he paid only one-half of the original demand, he could not recover it, notwithstanding that the intent of the law was to refund all such payments, because they should not have been collected in the first instance. Such a construction would not only penalize a taxpayer who challenged an erroneous assessment of undistributed profits taxes, but would in such cases defeat the manifest intent of Congress to refund what should not have been collected in the first instance.·

Neither do I agree that undistributed profits taxes were not involved in the compromise of taxes for the years in which such taxes were in force. The issue in dispute, and which was compromised, was the corporation's tax liability for the years in question. The rate of depreciation was merely the factor which caused the dispute as to the taxpayer's total tax liability. The government was not primarily concerned with the rate of depreciation set up on the taxpayer's books. It was concerned with the amount of tax due from the corporation. The tax liability always depends upon numerous factors, such as depreciation, operating expenses, and business losses. There can be no dispute as to the amount of taxes due without a dispute over the application of some of these factors. In the end, however, what is compromised is the total amount of the tax liability.

All taxes, whether normal taxes or undistributed profits taxes, are levied on net taxable income. When the rate of depreciation was compromised it resulted in a deceased net income subject to taxes. This reduced the amount of the undistributed profits tax which would be due, as well as the amount of the normal tax which would be due. Both were determined from the amount of net taxable income. The corporation's 1936 tax return shows the following computations:

| | |
|---|---|
| Normal tax | $ 1,354.83 |
| Total surtax | 1,589.14 |
| Total normal and surtax | $ 2,943.97 |

For 1937, it shows the following:

| | |
|---|---|
| Normal tax | $ 4,342.99 |
| Total surtax | 6,162.63 |
| Total normal and surtax | $10,505.62 |

Raising the rate of depreciation would correspondingly reduce the amount of the net taxable income, which in turn would reduce both the normal tax and the surtax on undistributed profits. It follows that when the total tax liability was compromised by compromising the rate of depreciation, the compromise involved both normal taxes and surtaxes on undistributed profits.

If all that had been involved in the compromise settlements was the liability for undistributed profits tax due from the corporation, such a compromise, in my view, would be no bar to recovery under the

820

1942 Act, because it would be without consideration. In the Big Diamond Mills Co. case, cited in the majority opinion, the government and the taxpayer compromised the amount of interest on a delinquent assessment. Later, when the assessment was declared invalid and was refunded, the government resisted an action to recover the compromised interest on the ground of the compromise. The court, however, held that the tax liability was single, and that what the parties compromised was not the penalty interest but the tax liability for the year in question, and that since there was no valid tax liability there was no consideration for the compromise of the interest. The Act of 1942 destroyed the right of the government to retain the undistributed profits taxes collected from this corporation. It would seem to follow that when it lost this right, a compromise concerning such tax element would fall with the tax for want of consideration.

As stated in the Dig Diamond Mills case, a compromise is a contract, which must have all the elements of ordinary contracts, such as parties, subject matter, and consideration. Is it not therefore reasonable to conclude that Congress intended to bar the right to a recovery of an undistributed profits tax which admittedly should not have been collected, when the taxpayer's tax liability for the year in question had been compromised by an agreement supported by valuable consideration, rather than by a compromise which concerned only the tax item which Congress intended to refund?

The compromises which were made with this taxpayer were supported by valuable consideration. The government was contending for a rate of depreciation which would have given it the right to collect a greater amount of normal tax, as well as surtaxes, than were actually collected. When the government compromised its contentions as to the applicable rate of depreciation, it compromised its claim to greater normal taxes, as well as to surtaxes. This right has been lost and cannot be restored by the refund of the undistributed profits tax. It follows that the compromise was supported by valuable consideration and should be a bar to the refund of the,

undistributed profits tax in this case. For these reasons, I am impelled to the conclusion that the compromises were bars to the corporation's right to recover the surtaxes in question.