UNITED STATES *v.* MEMPHIS COTTON OIL CO.

No. 308. Argued December 9, 1932.—Decided January 9, 1933.

*Assistant Attorney General Rugg*, with whom *Solicitor General Thacher* and *Messrs. Whitney North Seymour, Bradley B. Gilman*, and *Wm. H. Riley, Jr.*, were on the brief, for the United States.

*Mr. Walter E. Barton* for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

· Respondent, the plaintiff in the court below, brought suit against· the United States in the Court of Claims to recover overpayments of incomes taxes for the years 1922 and 1923. The government opposed recovery upon the ground that the claims filed with the Commissioner of Internal Revenue for the refund of the tax were too general and indefinite to comply with the provisions of the statutes. and regulations, and that amendment came too late. The Court of Claims gave judgment in favor of the taxpayer. 59 F. (2d) 276. A writ of certiorari brings the case here.

· The central question in the controversy can be stated in a sentence: May a claim for a tax refund which has been seasonably filed, but which fails to state the grounds upon which the refund is demanded, be amended by specifying the grounds at any time before the claim in its original form has been finally rejected, though it be after the time when a wholly new claim would be barred by limitation?

The respondent made and filed its income tax returns for 1922 and 1923 in accordance with the statute. It paid the last instalment of the earlier tax on December 7, 1923, and the last instalment of the later one on December 6, 1924. Claims for refund of overpayments were filed in June, 1927, within the time prescribed by law.

In the refund claim for 1922 there was a statement of the amount of the tax paid ($25,626.25), a statement of the correct amount due ($24,296.56), a statement that there had been overpaid in error $1,329.69, and a request for refund of that amount with interest as provided by law, or such greater amount as might be legally refundable. Attached to the claim was the following summary

of the method of computation: net income, $194,372.46; 12½ per cent, $24,296.56; previously paid, $25,626.25; overpaid, $1,329.69. There was no other specification of supporting facts or reasons.

In the refund claim for 1923 the claimant followed the same form that was used for 1922, but with appropriate changes of the figures. The overpayment was stated to be $1,813.39, and there was a request for the return of that amount or of any greater amount due.

Upon receipt of these claims, the Commissioner of Internal Revenue, in order to pass upon the merits, made an investigation and an audit of the claimant's books and records for 1922 and 1923 through a duly appointed agent. The agent reported to the Commissioner that there had been overassessments for both years, the excess being fixed at $1,660.70 for 1922 and $4,835.76 for 1923. Thereupon a Deputy Commissioner notified the taxpayer in writing under date of October 13, 1928, that its refund claims had been considered, that the taxes had been readjusted in accordance with the new audit, and that the overassessments for the two years would be made the subject of certificates of overassessment, which would be transmitted in due course through the office of the appropriate collector. Nothing further was said or done as to the matter till January 26, 1929, when the same Deputy Commissioner who had signed the notice last mentioned, transmitted to the taxpayer another notice that the claims were defective in form in that they failed to satisfy the requirements of the Treasury Regulations. After quoting the pertinent provisions, he stated: " Since the information on file with the claims does not meet the requirements " of the regulations, " and the claims do not indicate [i. e., apart from the investigations of the Revenue Agent] that the taxes have been illegally assessed, they will be rejected. The rejection will officially appear in a schedule to be approved by the Commissioner." Thereupon the claim-

ant, protesting that an amendment was unnecessary, filed a new claim with the Commissioner on April 2, 1929, in which the facts were set forth in detail. The Commissioner gave final notice of rejection on October 23, 1929, placing his ruling on the ground that the claims as first presented were defective and irregular. In this suit by the taxpayer, the Court of Claims has given judgment for the moneys overpaid.

Statutes make it necessary that claims for the refunding or crediting of any internal revenue tax erroneously or illegally assessed or collected shall be presented to the Commissioner within a prescribed period of time and prohibit allowance of the claims if these conditions are not satisfied. Revenue Act of 1926, § 284 (b). Statutes also provide that no suit or proceeding shall be maintained in any court for the recovery of such a tax " until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof." Revenue Act of 1921, § 1318 as amended by Act of March 4, 1923, c. 276. During the period of these transactions, there had been promulgated under the Revenue Act of 1921 and was continuously in force a treasury regulation which provides as follows: " Claims by the taxpayer for the refunding of taxes and penalties erroneously or illegally collected shall be made on Form 843. In this case the burden of proof rests upon the claimant. All the facts relied upon in support of the claim should be clearly set forth under oath." Treasury Regulations 62, Article 1036.[1]

The claim for refund filed with the Commissioner in June, 1927, was not subject to rejection on the score of

---

[1] A later regulation, different in form, is applicable to claims filed on or after May 1, 1929. Treasury Decision 4265, Cumulative Bulletin VIII—1, p. 110.

the time of its submission. As to this the parties are agreed. Indefinite and general it was, and hence, until amended or supplemented, an inadequate compliance with the Treasury requirement that the facts relied upon in support of a claim are to be stated under oath. Beyond doubt it might have been rejected as irregular while its form was uncorrected. This is far from saying that there was the presentation of a new claim and not the perfecting of an old one when the gaps were filled thereafter.[2]

Both the government and the taxpayer invoke analogies suggested by pleadings in a lawsuit. The general rule is said to be that an amendment of a pleading will take effect by relation and thus relieve against the bar of an intervening limitation if the identity of the cause of action is still substantially the same, but that the limitation will prevail if under the guise of an amendment there is the substitution of a new cause of action in place of another wholly different. *Baltimore & O. S. W. R. Co.* v. *Carroll,* 280 U. S. 491; *Seaboard Air Line Ry.* v. *Renn,* 241 U. S. 290, 293; *Harriss* v. *Tams,* 258 N. Y. 229, 242; 179 N. E. 476. The analogy is helpful, yet it will confuse, instead of helping, if we do not insist at the beginning upon a definition of our terms or at least a recognition of their shifting meanings. A " cause of action "

---

[2] Official statistics indicate that " eighty-five 20/100 per cent of all the overassessments are attributable to clerical or bookkeeping adjustments or to causes beyond the control of either the Treasury or the taxpayer, that is to adjustments after the payment of taxes based upon causes which could not fairly be considered prior to the payment." Refunds and Credits of Internal Revenue Taxes, Report of the Joint Committee on Internal Revenue Taxation, 1929, pursuant to § 710 of the Revenue Act of 1928, H. Doc. No. 43, Supplement to Part II, p. 29. Cf. H. Doc. No. 478, 71st Cong., 2d Sess. (1930). These statistics, covering adjustments of taxes under the Act of 1928, give support to the conclusion that in determining the application of a statute of limitations the word " claim " should be interpreted with reasonable liberality.

may mean one thing for one purpose and something different for another.[3]  It may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of *res judicata.*  Cf. *Chicago, R. I. & P. Ry. Co.* v. *Schendel,* 270 U. S. 611, 617; *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316, 321.  At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty.[4]  At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ.[5]  Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed.[6]  This court has not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed.  None the less, it has fixed the limits of amendment with increasing liberality.  A change of the legal theory of the action, " a departure from law to law," has at times been offered as a test.  *Union Pacific Ry. Co.* v. *Wyler,* 158 U. S. 285, 295.  Later decisions have made it clear that this test is no longer accepted as one of general validity.  Thus, in *Missouri, Kansas & Texas Ry. Co.* v. *Wulf,* 226 U. S. 570, plaintiff suing in her individual capacity under a Kansas statute for her son's death was allowed to amend to sue as administratrix under the

[3] The uncertainties of the phrase have been well developed by Dean Clark with full citation of the decisions in his treatise on Code Pleading, pp. 75–87, 501–508.

[4] Clark, Code Pleading, p. 81 and cases there cited.  Pomeroy, Code Remedies, 4th ed., § 347.

[5] Clark, *supra,* p. 502, and cases there cited.

[6] Clark, *supra,* pp. 83, 84, 505, and cases there cited.

Federal Employers' Liability Act after the statute of limitations would have barred another action. In *New York Central & H. R. R. Co.* v. *Kinney,* 260 U. S. 340, there was in substance the same ruling. In *Friederichsen* v. *Renard,* 247 U. S. 207, a cause of action by a defrauded buyer to set aside a contract was turned into a cause of action to recover damages for deceit. " Of course an argument can be made on the other side, but where a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." *New York Central & H. R. R. Co.* v. *Kinney, supra,* p. 346.[7]

With this background of analogy, we reach the specific problem that calls for answer here. The respondent filed a claim for taxes overpaid, a claim for money had and received to his use by the agents of the government. The identity of the cause of action may be said in one aspect to depend upon the mere fact of overpayment, the existence of a net balance owing to the taxpayer after the ascertainment of all items of debit and of credit. In another aspect it may be said to depend upon the identity of the items illegally exacted, and hence upon the particular grounds that determine illegality. Choice between these meanings must avoid a doctrinaire adherence to abstract definitions. It must keep in view the realities of administrative practice, for its effect will be to regulate the conduct of administrative officers. Definitions and analogies borrowed from pleadings in a lawsuit will have their place and recognition, but in due subordination to differences of end and aim. Viewing the problem thus, we must say whether a statement by the taxpayer of supporting facts

---

[7] Other cases are collected by Clark, *supra,* pp. 504, 505.

and reasons is to be assimilated to a bill of particulars explanatory of a claim, or is something so essential that there can be no claim without it.

Our decision in *Lewis* v. *Reynolds*, 284 U. S. 281, goes far to point the answer. The court there ruled that upon a claim for the refund of a tax because of the disallowance of a particular deduction, the Commissioner might sustain the result by the disallowance of another deduction, and this though the time had gone by within which he would have been at liberty, if a claim had not been filed, to make a new assessment. The court applied the analogy of a common law action for money had and received. "The ultimate question presented for decision upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability." No matter though the claim for refund be specific and limited, the Commissioner is at liberty to audit the return afresh and to strike a new balance as the facts may then appear. Commonly, though, it seems, not always, a general audit will be necessary or will be at least a wise precaution, whether the claim is broad or narrow, if the government is to have the benefit of any compensating adjustments.[8] There is little doubt that this conception of duty and of prudence has had recognition and emphasis in administrative practice.

The practice is portrayed in action in the pages of this record. We are there informed in a striking way of the actual procedure where a notice, general in its terms, is not rejected at the beginning for irregularity of form, but is considered on the merits. At once upon the filing of the claim for refund, there was an order for the complete examination of the business of the taxpayer, to the end

[8] Compare Report of the Joint Committee on Internal Revenue Taxation, 1928, pursuant to § 1203 of the Revenue Act of 1926, vol. III, pp. 25, 30.

that the net amount of its tax liability might be reported to the Bureau. Every claim put forward in its amended notice has been investigated, every fact alleged in its behalf has been verified and found. The files of the Bureau contain the report of an examiner informing his superior that the tax has been overpaid, and the files of the taxpayer contain an official notice that the overassessment is recognized and that justice will be done. Of a sudden, at the end, the discovery is made that the inquiry is mere futility because the notice starting it in motion has departed in form from the requirements of a rule.

In the light thus supplied by the practice of the Bureau and the analogy of pleadings, the way is cleared for a conclusion. The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research. The Commissioner has the remedy in his own hands if the claim as presented is so indefinite as to cause embarrassment to him or to others in his Bureau. He may disallow the claim promptly for a departure from the rule. If, however, he holds it without action until the form has been corrected, and still more clearly if he hears it, and hears it on the merits, what is before him is not a double claim, but a claim single and indivisible, the new indissolubly welded into the structure of the old.

The cases in this court are not at all at variance with the conclusion now arrived at, though they leave the problem open. *Tucker* v. *Alexander,* 275 U. S. 228, holds that it is within the power of the Commissioner to waive the objection that the supporting facts or reasons have not been stated in the claim. *United States* v. *Felt & Tarrant*

*Co.*, 283 U. S. 269, holds that a defective claim for refund will not supply a basis for a suit against the government when there has been neither waiver by the Commissioner nor amendment by the taxpayer. *Bonwit Teller & Co.* v. *United States,* 283 U. S. 258, holds that a letter from the taxpayer, accompanied by a form of waiver requested by the Bureau, will be the equivalent of a notice of claim if the Commissioner has so treated it.

The cases in the lower federal courts may not be wholly harmonious as to the extent to which amendments are allowable after the running of the statute, but there is general agreement that the applicable analogy is to be found in the rules governing the amendment of a pleading. *McKesson & Robbins, Inc.* v. *Edwards,* 57 F. (2d) 147; *Art Metal Construction Co.* v. *United States,* 47 F. (2d) 558; *Lancaster Cotton Mills* v. *United States,* 59 F. (2d) 270; *Lehigh & Wilkes Barre Coal Co.* v. *United States,* 38 F. (2d) 637. Cf. Peruna Co., 11 B. T. A. 1180, 1189; Sevier *v.* Commissioner, 14 B. T. A. 709, 716.

One other question, less general in its significance, is yet to be considered. An argument is made that at the time of this amendment the claim had been finally rejected and the proceeding thereby ended. If so, it was too late. *McKesson & Robbins* v. *Edwards, supra; Solomon* v. *United States,* 57 F. (2d) 150. When correction is thus postponed, there is no longer anything to amend, any more than in a lawsuit after the complaint has been dismissed. We think the matter was still *in fieri.* True the Deputy Commissioner had given notice to the taxpayer that the claims would be rejected, and that the rejection would be officially announced in a schedule to be approved thereafter. No reason is apparent why at any time before such approval the Commissioner or his Deputy was not at liberty to recall the first announcement, and dispose of the case otherwise. *Michel* v. *United States,*

37 F. (2d) 38, reversed, but on other grounds, 282 U. S. 656. We are not now considering what the practice ought to be if there were need to open the proceeding for the submission of other evidence extrinsic to the claims themselves. Neither in the record nor in the argument do we find a suggestion of that need. Long before the amendment the Commissioner had ascertained the facts and had even notified the taxpayer of the justice of its claims and of the ruling of the Bureau that adjustments would be made accordingly. The dismissal of the claims, when finally announced, was for defects of form only. The defects had been corrected, and the dismissal may not stand.

We find it unnecessary to determine whether the conduct of the Commissioner in investigating the claims upon their merits and reporting to the claimant the result of his inquiry was a waiver of defects of form which would call for the return of overpayments though no amendment had been offered.

The judgment is

*Affirmed.*