## WEST VIRGINIA PULP & PAPER CO. v. BOWERS.

District Court, S. D. New York.

April 12, 1935.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Montgomery B. Angell and Marvin Lyons, both of New York City, of counsel), for plaintiff.

Martin Conboy, U. S. Atty., of New York City (Leon E. Spencer, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The action is brought to recover an alleged overpayment of income tax for the year 1917, in the amount of $262,312.26. The motion is by the defendant for judgment on the pleadings, and is based on the amended complaint, the answer, the reply, and a bill of particulars furnished relative to the allegations in the reply. The defendant urges that the plaintiff has made admissions in its pleadings that throw the case out of court.

The transaction shown by the amended complaint is this: The plaintiff as early as 1910 sold paper and made cash advances to a publishing company, Currier Publishing Company. By 1913 the debt owed to the plaintiff had grown to the figure of $630,926.04. Meanwhile it had acquired part of the stock of the Currier Company at a cost of $16,459.90, and controlled the management of the latter's business through voting trust. Other stockholders threatened trouble. On April 17, 1913, the Currier Company was thrown into bankruptcy. The plaintiff through a nominee made an offer of $217,000 for the bankrupt's assets, the only bid received, and the assets were sold by order of the bankruptcy court to the plaintiff's nominee at that figure. It is alleged that the figure of $217,000 was merely an arbitrary one, that the assets had a real value of $700,000. The plaintiff received some $224,000 as a dividend from the bankrupt estate, and the old company became defunct. The assets so acquired for $217,000 were forthwith transferred by the nominee to a new company, Woman's World Magazine Company, organized at the plaintiff's instance. The new company, in payment or exchange, issued its shares of stock to the nominee, who turned them over to the plaintiff, and the new company carried on the old business without interruption. In the period from 1913 to 1917 the plaintiff made advances to the new company aggregating $579,090.35, for which it ultimately received further shares of stock. On the plaintiff's books the debt of the old company was carried forward as a debt of the new company. The total advances made by the plaintiff were $1,216,596.72, consisting of advances prior to bankruptcy in $637,506.37 (this being made up $647,000 advanced to or invested in the old company, less about $10,000 net receipts from the bankruptcy proceeding) and advances subsequent to bankruptcy in the amount of $579,090.35.

In 1917 the plaintiff sold the stock in the new company to a stranger for the sum of $400,000. The difference between $1,216,596.72 and $400,000, amounting to $816,596.72, was charged off as a loss sustained in 1917. The plaintiff deducted this sum from gross income on its tax return for 1917. The Commissioner on auditing the return refused to allow this deduction in full. He held that the greater part of it was a loss sustained in 1913, when the old company became bankrupt. He took the advances to the new company at the figure of $524,287.88, and allowed deduction only of $341,287.88, representing what he calculated to be the loss to the plaintiff on its investment in the new company. The result was that in 1924 the plaintiff was obliged to pay additional tax for 1917 of $262,312.26.

The plaintiff filed claim for refund, asserting that it should have been allowed as deductible loss the full amount claimed, $816,596.72. The claim for refund is before us on this motion, since a copy is annexed to the defendant's answer and the plaintiff's reply admits the correctness of the copy. The facts set forth in the claim for refund were in substance the same as those now pleaded in the amended complaint and recited above, with these exceptions: (1) The claim did not mention the price paid by the plaintiff for the assets of the bankrupt estate of the old company or the dividends received on its claim against the bankrupt estate; nor did it name any figure as the real value of the assets so acquired and turned over to the new company; (2) in the claim for refund, the total advances, $1,216,596.72, were split up as $692,308.84 advanced prior to bankruptcy in 1913 and $524,287.88 advanced after

548

bankruptcy. In the narration of facts in the amended complaint, there is the same total, but advances prior to bankruptcy are listed as smaller by $54,802.47 and advances after bankruptcy as larger by the same figure. In the claim, the plaintiff put its demand for refund on the proposition that the transaction was a continuous one from 1910 until 1917, and that consequently the entire loss was sustained in 1917. It is pleaded further in the reply, however, that the Commissioner considered all the grounds on which the action is predicated in the course of his consideration of the claim for refund, having been apprised by the plaintiff of such grounds.

It will be seen that the amended complaint puts forth facts in support of three distinct and alternative causes of action or bases of recovery, to the same effect as if the three were stated in separate counts. The first is that the plaintiff's advances and investments from 1910 to 1917 constituted one continuous transaction, unbroken by the bankruptcy of the old company in 1913, and that consequently the loss was measured by the difference between the total amount advanced and invested and the amount ultimately realized; such difference being $816,596.72.

The second basis assumes that the continuity was broken by the bankruptcy in 1913. It rests primarily on the allegation that the assets turned over by the plaintiff to the new company in exchange for stock, costing $217,000, were actually worth $700,000. On this basis the cost of the stock to the plaintiff is asserted to have been $700,000, which together with the $579,090.35 later advanced to or invested in the new company made a total of $1,279,090.35, against realization of $400,000; the loss was then $879,090.35, an amount even greater than the loss claimed on the return.

The third basis is that in any event the additional tax paid was excessive, because the plaintiff's advances to the new company were erroneously taken by the Commissioner at $524,287.88, instead of at the true amount of $579,090.35; that the loss therefore was not the Commissioner's allowance of $341,287.88, but was at least $396,090.35.

■ 1. The first basis of recovery cannot be supported. The advances and investments relative to the old company and later to the new company may not be grouped into one continuous transaction. On the bankruptcy of the old company in 1913, the plaintiff sustained a loss of its loans and investments, diminished of course to the extent of the dividends received out of the bankrupt estate. As matter of law, the plaintiff's account receivable and shares of stock in the bankrupt company became worthless. See Duffin v. Lucas, 55 F.(2d) 786, 795 (C. C. A. 6), certiorari denied 287 U. S. 611, 53 S. Ct. 14, 77 L. Ed. 531. It follows that, in determining the plaintiff's loss in 1917, no part of the loans or investment in the old company may be considered.

■ 2. The second theory also fails. The plaintiff exchanged the assets which it had just bought for shares of stock in the new company. It is not alleged that the shares of stock so received had a market value. Under the 1913 act (38 Stat. 166) and the 1916 act (39 Stat. 756), this exchange of property for stock did not result in taxable gain. Bourn v. McLaughlin, 19 F.(2d) 148 (D. C. Cal.). The cost of the shares of stock was the price paid for the assets, $217,000, and the allegation that the assets were actually worth $700,000 makes no difference. The plaintiff's total investment in the new company therefore was $217,000 as original cost, plus $579,090.35 later advanced, or an aggregate of $796,090.35, against realization of $400,000 in 1917; the loss was $396,090.35. The loss allowed by the Commissioner was $341,287.88. The difference of $54,802.47 is due to the fact that the Commissioner took the advances to the new company at $524,287.88, as contrasted to $579,090.35. The plaintiff's right to recover the tax on the spread between these two figures is raised by the last of the three grounds of recovery.

■ 3. The third ground of recovery is a sound one on its face, provided the plaintiff has satisfied the requirement relative to filing claim for refund prior to bringing suit. But it is plain, I think, that in this respect the suit is a departure from the claim for refund. The claim for refund gave the advances to the new company as $524,287.88, not as $579,090.35, and the former figure is the very one used by the Commissioner in fixing the tax. The alleged error was not discovered by the plaintiff until after this suit was commenced.

By statutory provision, the filing of claim for refund is a prerequisite to suit to recover tax paid. By applicable regulation, "all the facts relied on in support of the claim" must be clearly set forth under

oath. Regulations 62, art. 1036. Where the claim for refund presents certain facts as ground for repayment of tax, a later suit embracing other grounds of recovery resting on other facts may not be maintained. Weagant v. Bowers, 57 F.(2d) 679 (C. C. A. 2); Snead v. Elmore, 59 F.(2d) 312 (C. C. A. 5); Continental-Illinois National Bank & Trust Co. v. United States, 67 F.(2d) 153 (C. C. A. 7), certiorari denied 291 U. S. 663, 54 S. Ct. 439, 78 L. Ed. 1054; Freeport Texas Co. v. Bowers, 6 F. Supp. 423 (D. C. N. Y.), decided by Judge Coxe. See, also, United States v. Felt & Tarrant Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025. The fact now relied on, that the loans or investments relative to the new company were $579,090.35, rather than $524,287.88, was not mentioned in the claim for refund.

It is true that objections to the sufficiency of a claim for refund may be waived by the government. Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253. The plaintiff has pleaded in its reply that there was such a waiver by the Commissioner having considered "the grounds upon which this action is predicated in the course of his consideration of the claim for refund." Whether such consideration by the Commissioner of other grounds and other facts than those mentioned in the claim for refund is a waiver of defects in the claim was expressly left open in United States v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619. Such conduct by the Commissioner has been deemed a waiver in several District Court cases. Union Trust Co. v. McCaughn, 24 F.(2d) 459 (D. C. Pa.); United States Paper Exports Ass'n v. Bowers, 6 F. Supp. 735 (D. C. N. Y.). In line with the cases just mentioned, it will be assumed that consideration by the Commissioner of all grounds of recovery relied on in the action would result practically in broadening the claim for refund. It is plain, however, that this portion of the reply, comprehensive in terms as it is, is in reality aimed only at pleading a waiver as to the second ground of recovery. The plaintiff in its brief concedes that the alleged understatement of the amount of the advances as $524,287.88, instead of $579,090.35, was its own error and was not discovered by it until after the action was commenced. The original complaint made no mention of this alleged error. This matter then could not have been before the Commissioner when the claim for refund was being considered, and as to this ground of recovery there was no waiver.

For the reasons discussed, the defendant's motion for judgment on the pleadings must be granted.