**YOUNG et al. v. UNITED STATES.**
**Civ. No. 943.**

United States District Court
W. D. Arkansas, Fort Smith Division.
Feb. 28, 1952.

In their original complaint plaintiffs seek to recover the sum of $14,027.03 income and excess profits tax paid for calendar year, 1944, by virtue of a net operating loss carry-back to 1944 from the year 1946. By amendment to their complaint plaintiffs seek to recover the said sum of $14,027.03 by virtue of a net operating loss carry-back to either 1944 or 1945 from the year 1946. Defendant filed answers to the complaint and the amendment thereto, denying the right of plaintiffs to recover, and the respective parties have filed requests for admissions and responses thereto.

The case came on for trial to the court on January 28, 1952, and at the conclusion of the presentation of the testimony, was taken under advisement by the court, and the parties were requested to submit briefs in

support of their respective contentions. The briefs have now been filed, and the court, having considered the pleadings, requests for admissions and responses thereto, testimony adduced at the trial and exhibits, and the briefs of counsel, now makes and files herein its findings of fact and conclusions of law, separately stated.

Thomas Harper, Fort Smith, Ark., for plaintiffs.

Lester L. Gibson, Special Asst. to Atty. Gen., R. S. Wilson, U. S. Atty., Charles A. Beasley, Jr., Asst. U.S. Atty., both of Ft. Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Findings of Fact.

**1.**

The plaintiffs, R. A. Young, Sr., and R. A. Young, Jr., are citizens of the State of Arkansas and reside in the City of Fort Smith, County of Sebastian, Arkansas. They and H. W. Young, now deceased, were the sole stockholders and directors of Twin City Coach Company and joined by R. A. Young, Jr. as executor of the estate of H. W. Young, deceased, bring this suit as Directors and Trustees of Twin City Coach Company, a dissolved corporation.

Twin City Coach Company paid corporation income taxes and excess profits taxes for 1944 amounting to at least $16,205.-29 and for 1945 amounting to at least $20,172.06. These taxes were paid to Collectors of Internal Revenue for the District of Arkansas who were not in office as such collectors when this case was commenced on January 12, 1951.

**2.**

On August 9, 1946, and since 1933, the Twin City Coach Company, an Arkansas corporation, was the owner and operator of an urban bus transportation system in the cities of Fort Smith and Van Buren, Arkansas. On August 9, 1946, R.A. Young, Sr., R. A. Young, Jr., and H. W. Young purchased all of the outstanding common stock of the Twin City Coach Company, each acquiring ⅓ thereof. On the same date they were elected and qualified as sole

directors of Twin City Coach Company, and R. A. Young, Sr., was elected president, H. W. Young, vice-president, and R. A. Young, Jr., secretary-treasurer. H. W. Young died testate on November 26, 1946, and R. A. Young, Jr., is the duly qualified and acting executor of his estate.

**3.**

From August 9, 1946, until September 30, 1946, Twin City Coach Company, a corporation, was operated under the control and management of the officers and directors above named. On the latter date Twin City Coach Company was dissolved pursuant to the laws of the State of Arkansas, and its assets were transferred to the said R. A. Young, Sr., R. A. Young, Jr., and H. W. Young in equal proportions.

From October 1, 1946, until October 6, 1946, R. A. Young, Sr., R. A. Young, Jr., and H. W. Young operated the properties of Twin City Coach Company, dissolved, as a partnership, under the name of Twin City Lines, with each owning a ⅓ interest. On October 6, 1946, they transferred the assets and properties of the partnership to Twin City Lines, Inc., an Arkansas corporation duly incorporated by them on October 6, 1946, and the said individuals became the owners of 1,000 shares each of the 3,000 shares of outstanding capital stock. The Youngs were the sole directors of Twin City Lines, Inc., and R. A. Young, Sr., was president, H. W. Young, vice-president, and R. A. Young, Jr., secretary-treasurer thereof.

**4.**

On December 13, 1946, Twin City Coach Company filed a return of income with the Collector of Internal Revenue for the District of Arkansas for the period January 1, 1946, to the close of business on September 30, 1946, and paid the tax determined by it and shown due thereon. The return showed a net income of $54,479.14 and a tax of $20,702.07.

This return was audited and by registered letter dated October 26, 1950, the Commissioner assessed a deficiency of $10,-590.53. Expenses in the sum of $19,-615.24 and depreciation and amortization in the sum of $9,955.72, making a total of

$29,570.96, were disallowed, with the result that the net income adjusted was $84,050.10, and the tax due was $31,292.60 instead of the $20,702.07 reported, which left a deficiency of $10,590.53.

The $19,615.24 in expenses claimed by Twin City Coach Company and disallowed by the Commissioner represent items of indebtedness of said company which had accrued and were owing on September 30, 1946, but which were not actually paid until after the dissolution of that company. On September 30, 1946, Twin City Coach Company was indebted for gasoline and oil used in its buses in the sum of $16,060.18, for labor performed and unpaid in the sum of $2,482.40, and for social security and unemployment compensation taxes accrued and unpaid to that date in the sum of $1,072.66, making the total of $19,615.24. On that date, at the time of the dissolution, Twin City Coach Company had cash in the bank of $39,188.45, together with other assets, which, along with the above mentioned liabilities, were transferred on dissolution to the former stockholders, the Youngs, who conducted the business as a partnership for the period of six days, October 1 through 5, 1946, and on October 6, 1946, the partnership transferred to Twin City Lines, Inc., cash in bank amounting to $53,319.81 and other assets, together with liabilities of the partnership set forth by plaintiffs as taxes payable, $1,125.66; accounts payable, gas and oil, $2,320.71; accrued labor, $2,650.00; accounts payable, gas, oil and parts, $16,060.18.

On October 4, 1946, there was paid from cash transferred from Twin City Coach Company, dissolved, and during the pendency of the partnership, Twin City Lines, the item of accrued labor of $2,482.40 and the accrued social security and unemployment taxes of $1,072.66, set forth above as owing and unpaid by Twin City Coach Company on the date of its dissolution. On October 28, 1946, out of the cash transferred to the corporation, Twin City Lines, Inc., by the partnership, the item of $16,060.18, owed for gas and oil by Twin City Coach Company on the date of its dissolution, was paid by Twin City Lines, Inc.

Concerning the disallowance of the $19,615.24 in expenses, the Commissioner, in his letter of October 26, 1950, stated: "The Twin City Coach Company consistently filed income tax returns on a cash receipts and disbursements basis. However, as of October 1, 1946, items in the total amount of $19,615.24 were accrued on its books and claimed as deductions in the computation of the net income disclosed in the return filed by the corporation for the taxable year January 1, 1946, to October 1, 1946. Permission to change the corporation's method of accounting had not been previously secured. The items listed in the following summary in the total amount of $19,615.24 have been denied, therefore, as deductions for Federal income tax purposes."

At the trial accountants of the Twin City Coach Company testified as to the accounting method used by that company during the years it operated the bus line as follows: Accounts of that company due at the end of the year were frequently paid subsequent to the close of the year by checks which were dated prior to the close of the year, and which were shown as postclosing entries on the books.

One checking account was maintained in the First National Bank, Fort Smith, Arkansas, during the period January 1, 1946, to December 31, 1946. The bank records indicate that the title on the account was changed on the original ledger sheets from Twin City Coach Company to Twin City Lines, Inc., on October 26, 1946.

The transferees, these plaintiffs, of the Twin City Coach Company, dissolved, have filed a petition in the Tax Court contesting the $10,590.53 deficiency, and that matter is now pending in the Tax Court.

5.

On December 30, 1946, Twin City Lines, a partnership, filed its return of income with the Collector of Internal Revenue for the District of Arkansas for the fiscal period beginning October 1, 1946, and ending October 5, 1946.

On December 11, 1947, Twin City Lines, Inc., filed its corporation income tax return for the period beginning October 6, 1946,

**16**

and ending September 30, 1947, with the Collector of Internal Revenue for the District of Arkansas.

6.

On February 15, 1950, plaintiffs, as trustees of Twin City Coach Company, dissolved, filed a corporation income tax return for the period beginning October 1, 1946, and ending December 31, 1946, which showed a net operating loss for said period of $19,615.24. This sum is the total amount of the items of gas, oil, labor and social security and unemployment compensation taxes set out in Finding No. 4, which were owed by Twin City Coach Company on the date of its dissolution and which were paid in the manner set forth in that finding. The net operating loss figure is arrived at in the return by listing these items as expenses as against no income to them as Trustees during that period, October 1, 1946, through December 31, 1946.

On February 19, 1950, plaintiffs as trustees for Twin City Coach Company, dissolved, filed with the Collector of Internal Revenue for the District of Arkansas claim for refund in the amount of $14,027.03 for the year 1944, based on the carry-back provisions of the applicable revenue statute. For their "reasons" plaintiffs stated in the claim: "For period from October 1 to December 31, 1946, the company had a net operating loss of $19,615.24 as per Revenue Report and this net operating loss carried back to 1944 results in a refund of $14,-027.03 which is respectfully requested be refunded to us."

On February 2, 1951, the Commissioner of Internal Revenue by registered letter addressed to the plaintiffs at Fort Smith, Arkansas, rejected said claim for refund. The receipt of this letter is admitted by the plaintiffs. This letter does not state the reasons for the rejection, but the revenue agent's report on the claim, dated June 13, 1950, plaintiffs' Exhibit No. 2, contains the following: "An examination of the final return covered by RAR dated 11–23–49 resulted in a determination of net income of $84,050.10 and deficiency in the amount of $10,590.53. The taxpayer contends the de-

ductions in the amount of $19,615.24, disallowed because of inconsistency with its regular accounting method, were subsequently paid by the stockholder transferees and therefore, resulted in a loss which should be allowed as a carry-back to 1944. The items in question were assumed and paid by Twin City Lines, Inc., a successor corporation organized by the transferees and incorporated October 5, 1946. It is, therefore, recommended that the claim be rejected."

At another place in the report the following notation appears: "Claim for refund, dated 2–15–50, based on carry-back from 1946 appears to be barred by the statute of limitations."

On May 10, 1951, plaintiffs as Trustees for Twin City Coach Company, dissolved, filed with the Collector an amended claim for refund, the "reasons" for which are stated therein as follows:

"Inasmuch as our Claim filed January 10, 1950, has not been officially allowed, or rejected, claim is herewith amended to read as follows:

"For period from October 1 to December 31, 1946, the Company had a net operating loss of $19,615.24 as per Revenue Agent's report and this net operating loss carried back to 1944 or 1945, whichever year is applicable. Results in a refund of $14,027.03, which is respectfully requested be refunded to us."

As stated above, plaintiffs now admit that they received the Commissioner's letter of February 2, 1951, rejecting the original claim for refund. Also, it is apparent that the reference "our claim filed January 10, 1950," is an error, because the claim sought to be amended was filed February 19, 1950.

7.

The Commissioner of Internal Revenue has never allowed Twin City Coach Company, Twin City Lines, partnership, Twin City Lines, Inc., or plaintiffs as trustees and stockholders of Twin City Coach Company a deduction for income tax purposes on account of the following items due, pay-

able and unpaid by Twin City Coach Company on September 30, 1946:

| | |
|---|---|
| Gasoline and oil | $16,060.18 |
| Labor | 2,482.40 |
| Social security and unemployment taxes | 1,072.66 |
| Total | $19,615.24 |

8.

If the claim of plaintiffs is allowable under the law, the amount of $14,027.03 should be allowed.

## Discussion

On February 19, 1950, plaintiffs filed claim for refund in the amount of $14,027.-03 for the year 1944 based upon a net operating loss carry-back to 1944 from 1946. This claim was rejected by the Commissioner on February 2, 1951. Then, on May 10, 1951, plaintiffs filed an amended claim for refund in the same amount, based upon a net operating loss carry-back to 1944 or· 1945, whichever is applicable, from 1946.

The statute in force during the time involved here appears in Title 26 U.S.C.A. § 122(b) and provides, inter alia:

"(1) Net operating loss carry-back. If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and (B) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss.

"(2) Net operating loss carry-over. If for any taxable year the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the two succeeding taxable years  *  *."

Plaintiffs, as trustees of Twin City Coach Company, dissolved, filed a corporation income tax return for the period beginning October 1, 1946, and ending December 31, 1946. The return showed a net operating loss of $19,615.24. Plaintiffs would be entitled to a refund in the amount of $14,027.-03 if this loss is carried back to either 1944 or 1945.

█ As appears from the findings of fact, in order for there to be an operating loss, the period October 1 through December 31, 1946, must be treated as a taxable year. Thus, if the operations of Twin City Coach Company be considered from January 1, 1946, through December 31, 1946, it would have a net income of $64,-434.86, after deducting the expense items of $19,615.24, according to the adjusted figures resulting from the audit made by the Government. See Finding of Fact No. 4. When the expense items were disallowed in the return filed for Twin City Coach Company after its dissolution, for the period January 1, 1946, to October 1, 1946, because they were not paid until after October 1, 1946, plaintiffs, as trustees of the dissolved corporation, filed the return for the short period, October 1, 1946, through December 31, 1946, claiming a net operating loss based upon the payment of said expense items during that period and the receipt of no income during the period. Defendant, for purposes of the issues before this court and in support of its position here, not only does not contest this point, but insists that the period of October 1, 1946, through December 31, 1946, must be considered a taxable year. And, this result is in accordance with 26 U.S.C.A. § 48(a) which provides, inter alia: "  *   *   *  'Taxable year' means, in the case of a return made for a fractional part of a year under the provisions of this chapter or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made." (Emphasis added)

The word "means" replaced the word "includes" used in the former Act when the Revenue Act of 1942 was enacted, and apparently in the case of a return for a fractional part of a year, the period covered by the return is a taxable year for all purposes. See: 9 A.L.R.2d 330, Annotation, " 'Net operating loss' and its carry-back and carry-

over as a deduction under Internal Revenue Code", p. 346.

■ Furthermore, said expense items must have been paid by plaintiffs as trustees of the dissolved corporation to entitle them to a net operating loss carry-back, because the only person who can take a net operating loss deduction is the taxpayer who sustained the loss. Standard Paving Co. v. Commissioner of Internal Revenue, 10 Cir., 190 F.2d 330, 334. Plaintiffs correctly contend that they became trustees of the dissolved corporation under Arkansas law, and as such were custodians of its assets and charged with the duty of discharging its liabilities. Ark.Stats. (1947) 64–806, 64–807 and 64–808. They, with H. W. Young, deceased, were sole owners of Twin City Coach Company, dissolved, Twin City Lines, a partnership, and Twin City Lines, Inc. After H. W. Young's death his interest was and is here represented by R. A. Young, Jr., as executor. The manner of the payment of the expense items is set forth in Finding of Fact No. 4. All items were paid from the cash transferred from the dissolved corporation to the partnership and from the latter to Twin City Lines, Inc. Neither the partnership nor Twin City Lines, Inc., has claimed, and, of course, neither has been allowed, any deduction for income tax purposes on account of the payment of the expense items. Without further discussion, the court is of the opinion that for purposes of a net operating loss carry-back, these plaintiffs were and are trustees of the dissolved corporation, Twin City Coach Company, and as such paid the said expense items for and on behalf of Twin City Coach Company, dissolved.

■ Starting, then, with the premise of a net operating loss for the taxable year, October 1, 1946, through December 31, 1946, an examination of 26 U.S.C.A. § 122(b) reveals that such loss shall be a net operating loss carry-back for each of the two preceding taxable years. The statute contemplates that the loss be carried first to the second preceding year and then the excess, if any, of such loss over the net income of that year is carried to the first preceding year. In this case, the first preceding taxable year would be the period January 1, 1946, to October 1, 1946, and the second preceding taxable year would be the period January 1, 1945, through December 31, 1945. Thus, it is seen that a carry-back to the year 1944, as claimed in plaintiffs' claim for refund, would be to the third preceding year, which is not authorized by the statute.

■ In an apparent effort to bring their claim within the terms of the statute, plaintiffs filed an amended claim for refund on May 10, 1951, in which they asked that the loss be carried back to 1944 or 1945, whichever is applicable. However, the amended claim was filed after the original claim had been rejected and after the period of limitation fixed by 26 U.S.C.A. § 322(b) (6) had run. As expressed in United States v. Memphis Cotton Oil Co., 288 U.S. 62, 72, 53 S.Ct. 278, 282, 77 L.Ed. 619: "An argument is made that at the time of this amendment the claim had been finally rejected and the proceeding thereby ended. If so, it was too late. McKesson & Robbins v. Edwards, [2 Cir., 57 F.2d 147] supra; Solomon v. United States, [2 Cir.,] 57 F.2d 150. When correction is thus postponed, there is no longer anything to amend, any more than in a lawsuit after the complaint has been dismissed."

And, see Newport Industries, Inc. v. United States, 60 F.Supp. 229, 104 Ct.Cl. 38; 113 A.L.R. 1291, Annotation, p. 1302.

For this reason the Commissioner gave no consideration to the amended claim for refund, and this court can give none. In their brief, plaintiffs concede this point, but contend, "in view of the fact that 1945 was as easily available to the taxpayer as 1944, taxpayers contend that this is merely an error which is not fatal to a favorable consideration of the claim."

This is not a situation similar to the one that would exist in a case of an inadvertent clerical error, as was the case in United States v. Roth, 2 Cir., 164 F.2d 575, relied upon by plaintiffs. If it were, the court would either permit an amendment or treat the claim as amended to show the year intended. On the other hand, the court is convinced that 1944 was the year intended in the original claim for refund, and must proceed accordingly.

■ In effect, the plaintiffs' contention appears to be that the court can and should treat the claim for refund based upon a carry-back to 1944, which is not authorized, as an informal claim for a carry-back to 1945, which is authorized. Certainly, the equities are with the plaintiffs. The Government does not here dispute the amount of the expense items or that they are legitimate business deductions. They have been disallowed as to Twin City Coach Company, dissolved, because though accrued before its dissolution they were not paid until thereafter. As pointed out above they have not been claimed by the Twin City Lines, a partnership, or Twin City Lines, Inc. Plaintiffs seek to escape their dilemma by contesting the deficiency assessment based upon their disallowance as deductions as to Twin City Coach Company, dissolved, in the Tax Court, and seek to take advantage of them in this proceeding by way of a net operating loss carry-back. As stated by plaintiffs, it indeed does appear that somewhere, someway they should receive the benefit of such deductions.

■ However, this court's determination of the matter cannot be based upon equitable considerations. As expressed in Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416: "But allowance of deductions from gross income does not turn on general equitable considerations. It 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.' New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348." See, White v. United States, 305 U.S. 281, 59 S. Ct. 179, 83 L.Ed. 172; Helvering, Commissioner of Internal Revenue v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113; Standard Paving Co. v. Commissioner of Internal Revenue, supra.

■ It is true that a notice fairly advising the Commissioner of taxpayer's claim, which the Commissioner could reject because it does not comply with the statute and regulations, may be sufficient as a claim if the Commissioner has not been misled and has accepted and treated it as such. See United States v. Kales, 314 U.S. 186,

194, 62 S.Ct. 214, 86 L.Ed. 132, and cases cited therein. However, neither the Commissioner nor the courts are empowered to disregard a statutory mandate. As stated by the court in United States v. Carbutt Oil Co., 302 U.S. 528, 533, 58 S.Ct. 320, 323, 82 L.Ed. 405: "The argument confuses the power of the Commissioner to disregard a statutory mandate with his undoubted power to waive the requirements of the Treasury regulations. The distinction was pointed out in United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 53 S.Ct. 278, 281, 77 L.Ed. 619, wherein it was said: 'The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research.' In the cited case, and others decided at about the same time, we held that, while the Commissioner might have enforced the regulation and rejected a claim for failure to comply with it in omitting to state with particularity the grounds on which the claim was based, he was not bound to do so, but might waive the requirement of the regulation and consider a general claim on its merits. This was far from holding that after the period set by the statute for the filing of claims he had power to accept and act upon claims that complied with or violated his regulations."

In view of these decisions and others, and in view of the provisions of the various applicable statutes, the court is compelled to hold that the claim for net operating loss carry-back to 1944 cannot be treated by this court for other than what it was, a claim for a carry-back to 1944. As such it was properly rejected. An informal claim is not involved here, and a claim for a carry-back to 1945 is entirely independent and separate from a claim for a carry-back to 1944.

The only claim for a carry-back to 1945 was made after the running of the statute of limitation for the presentation of such a

claim and, therefore, could not be considered by the Commissioner or by this court. See, Byron Weston Co. v. United States, 87 F.Supp. 955, 115 Ct.Cl. 232, where the Court of Claims reached the same result in a similar case.

## Conclusions of Law.

### 1.

The Court has jurisdiction of the parties and of the subject matter of this case.

### 2.

Plaintiffs are and were at all times pertinent hereto duly authorized and acting Trustees of Twin City Coach Company, dissolved, and as such trustees for such dissolved corporation incurred a net operating loss of $19,615.24 during the period October 1, 1946, through December 31, 1946, which was a taxable year.

### 3.

Plaintiffs were not authorized to carry back such net operating loss to the year 1944, which was the third preceding year, and, therefore, plaintiffs' claim for refund based upon a net operating loss carry-back to 1944 was properly rejected.

### 4.

Plaintiffs' claim for refund based upon a carry-back to 1944 was intentionally filed for a carry-back to that year, and did not involve an inadvertent clerical error. And, the claim was not a mere informal claim for a refund based upon a carry-back to 1945, so that the Commissioner might be deemed to have waived any objections as to form by denying it on the merits.

### 5.

The only claim for refund based upon a carry-back to 1945 was the amended claim for refund filed May 10, 1951, which was after the period of limitation had run, 26 U.S.C.A. § 322(b) (6), and, therefore, this claim could not be considered by the Commissioner and cannot be considered by the court.

### 6.

The plaintiffs are not entitled to recover and judgment dismissing their complaint, at their costs, is being entered today.