### YOUNG et al. v. UNITED STATES.
### No. 14637.

United States Court of Appeals
Eighth Circuit.

April 29, 1953.

Thomas. Harper, Ft. Smith, Ark., for appellants.

Walter H. Beaman, Jr., Sp. Asst. to the Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack and Walter Akerman, Jr., Sp. Assts. to the Atty. Gen., R. S. Wilson, U. S. Atty., and Chas. A. Beasley, Jr., Asst. U. S. Atty., Ft. Smith, Ark., on the brief), for appellee.

Before SANBORN, RIDDICK and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The appellants sued to recover income taxes. Their complaint was dismissed and this appeal followed. The facts are as follows.

On August 9, 1946, H. W. Young, R. A. Young, and R. A. Young, Jr., purchased the Twin City Coach Company, a corporation, which owned and operated the public bus transportation system in Fort Smith and Van Buren, Arkansas. Each owned a one-third interest. On October 1, 1946, the Twin City Coach Company was dissolved according to the laws of Arkansas under

which the Youngs became trustees of the dissolved corporation for the purpose, among other things, of paying the corporation's unpaid debts. The Youngs operated the bus systems as a partnership from October 1, 1946, until October 6, 1946. On October 6, 1946, the Youngs, as partners, transferred the bus lines and all assets to the newly created corporation, Twin City Lines, Inc. Mr. H. W. Young died on November 22, 1946, and R. A. Young, Jr., became his executor and represents the estate in this action in that capacity.

The old corporation, the Twin City Coach Company, had paid income and excess profits taxes in 1944 and 1945. On December 13, 1946, the old corporation, by the Youngs, filed its income tax return for the period January 1, 1946, to the date of dissolution, October 1, 1946. On December 30, 1946, the Youngs filed a return for the partnership, Twin City Lines, for the period October 1, 1946, to October 6, 1946, during which the partnership operated the lines. And on December 11, 1947, the new corporation, the Twin City Lines, Inc., filed its return for the period October 6, 1946, to September 30, 1947. The old corporation's return for the period January 1, 1946, to October 1, 1946, showed a net income and a reported tax of $20,702.07. Included in that return as expense deductions were three items totaling $19,615.24, for gas and oil ($16,060.18), labor ($2,482.40), and social security and unemployment compensation taxes ($1,072.66), which the old corporation had become obligated to pay but had not actually paid on the date of formal dissolution of the corporation on October 1, 1946, and which the Youngs were obligated to pay out of the dissolved corporation's assets under Arkansas law. The dissolved corporation possessed adequate cash assets out of which they could be and were paid in October, 1946. But the old corporation had been filing its returns on the cash basis and because these bills had not actually been paid at the time of the formal dissolution of the corporation on October 1, 1946, the Commissioner disallowed these items as deductible expenses and assessed a deficiency against the Youngs as trustees of the dissolved corporation of $10,590.53. The Youngs appealed this disallowance and deficiency assessment to the United States Tax Court where it appears to have been pending at the time of the trial of this case. Apparently it has not yet been determined.

On February 15, 1950, the Youngs, as trustees for the old corporation, filed a return for it for the period October 1, 1946, to December 31, 1946, showing no income and the payment of the three items totaling $19,615.24 as expenses, resulting in a loss of $19,615.24 for that period. With the February 15, 1950, return they filed a claim setting up the operating loss of $19,615.24 for the period October 1, 1946, to December 31, 1946, and asserting their right to carry back that loss to the tax year 1944, which would result in an overpayment for the year 1944 of $14,027.03, for which refund was requested. The complaint in this action was filed January 12, 1951, for the alleged 1944 overpayment of $14,027.03, before the Commissioner disallowed the claim. On February 2, 1951, the Commissioner formally disallowed the claim for the carry-back to 1944. May 10, 1951, the Youngs, as trustees, filed an amended claim for a carry-back of the $19,615.24 operating loss to the tax year 1944 or 1945, "whichever year is applicable."

At the trial the Government took the position that if the $19,615.24 of expenses had been included in one return filed on behalf of the dissolved corporation for the entire year 1946, as they say it should have been, there would have been no net operating loss for that year and the deduction of these expenses from operating revenues would have resulted in a reduction in the amount of taxes for 1946 of only the amount of the deficiency assessment, to wit, $10,590.53, instead of the $14,027.03 claimed in this suit. The Government further contended that the propriety of the Commissioner's disallowance of the $19,615.24 deduction for the tax period January 1, 1946, to October 1, 1946, was properly before the Tax Court and for it to determine. It appears, inferentially, that the Government was not disputing the fact that the $19,615.24 item represented a proper ex-

pense deduction but that the propriety of taking that deduction in the January 1, 1946, to October 1, 1946, return was for the Tax Court to decide. Its position at the trial and here is that the period covered by the October 1, 1946, to December 31, 1946, return and the January 1, 1946, to October 1, 1946, return each constituted taxable years under the provisions of 26 U.S.C.A. § 48(a), which provides:

"* * * 'Taxable year' means, in the case of a return made for a fractional part of a year under the provisions of this chapter or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made."

and that therefore under section 122(b), 26 U.S.C.A. § 122 (b)(1)(A)[1] the loss for the "taxable year" October 1, 1946, to December 31, 1946, could not be carried back through the two preceding "taxable years" of January 1, 1946, to October 1, 1946, and January 1, 1945, to December 31, 1945, to the taxable year January 1, 1944, to December 31, 1944, to which latter year the claim for the carry-back was made.

And as to the amendment of the claim for the carry-back, made, as heretofore stated, on May 10, 1951, the Government contended in the trial court and also here that the original claim for the carry-back having theretofore been denied on February 2, 1951, there was no claim pending to amend on May 10, 1951, and the attempted amendment was abortive and ineffectual. Further, the Government says that if the attempted amendment of May 10, 1951, be considered as a new claim for a carry-back to 1945, the claim, as such, came too late and was barred by the special statute of limitations, found in section 322 (b)(6) of the Internal Revenue Code, 26 U.S.C.A., § 322.[2]

The trial court found the facts as stated above and reached the conclusion, not now controverted by the Youngs, that each period for which returns were filed on behalf of the old corporation constituted "taxable years" under section 48(a) of the Revenue Act, heretofore quoted. The court held that the claim for the carry-back could not extend to the taxable year 1944. As to the attempted amendment of the carry-back claim, the court held that since the amendment came after the original claim had been rejected and after the period of limitation within which a new claim could be filed, it could not be considered. Young v. United States, D.C., 103 F.Supp. 12. Judgment was entered dismissing the complaint.

The Youngs, as appellants, assert that the trial court erred in holding that the amended claim did not relate back to the original claim and was barred by limitation, and that the making of the claim for the carry-back for the taxable year 1944 instead of 1945 was merely an immaterial error which the Commissioner waived.

■ Obviously the appellants were entitled to the deduction of the $19,615.24 as expenses in determining net income. They do not contend that they are entitled to the benefit of the deduction both in the appeal

---

1. "(A) Loss for taxable year beginning before 1950. If for any taxable year beginning after December 31, 1941, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed—

"(i) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

"(ii) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss and without regard to any reduction specified in subsection (c)."

2. "Credit carry-backs. If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period of limitation prescribed in paragraph (1), the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back, * * *."

prosecuted in the Tax Court and also as a carry-back to the year 1944, but they do insist with complete justification therefor that they should have credit for the expenses in some manner. And that should be done if in the light of the manner in which they have applied for it the applicable statutes and regulations permit the allowance. But if they do not bring their claim within the orbit of some congressional authorization for its allowance, the courts are powerless to grant them relief. For as it has so frequently been said, general principles of equity may not be applied in tax cases, but claims must be brought within the scope of statutory authority for their allowance.

■ The amended claim could not relate back to the original claim. The original claim had been rejected. There was nothing to amend. As stated in Solomon v. United States, 2 Cir., 57 F.2d 150, 152:

"It seems that endless attempts to claim refunds would result if rejection had no effect upon the amendment of claims, and the limitation of the statute would be of no practical effect. With all the freedom of amendment modern conceptions of just procedure permit, there can be no right to amend after the claim has been denied."

In referring to this same question the Supreme Court said in United States v. Memphis Cotton Oil Co., 288 U.S. 62, 72, 53 S.Ct. 278, 282, 77 L.Ed. 619:

"An argument is made that at the time of this amendment the claim had been finally rejected and the proceeding thereby ended. If so, it was too late." Citing McKesson & Robbins v. Edwards, 2 Cir., 57 F.2d 147, and Solomon v. United States, 2 Cir., 57 F.2d 150.

The amended claim, not being an amendment to the previously rejected claim, was clearly barred by the special statute of limitation heretofore quoted, section 322(b) (6).

■ If, as the trial court stated in the memorandum opinion, the present situation was one similar to that in United States v. Roth, 2 Cir., 164 F.2d 575, where the year stated in a claim made for taxes in a bankruptcy court was an inadvertent clerical error, the claim would be treated as amended to show the year intended. But the trial court found the fact to be that, although the equities were with appellants, the claim was clearly for a refund of taxes paid for the year 1944, based on the carry-back provisions of the applicable revenue statute. The court stated in the memorandum opinion [103 F. Supp. 18] "* * * the court is convinced that 1944 was the year intended in the original claim for refund * * *." There is no justification in the record for holding that this finding is clearly erroneous.

■ The factual situation here does not present a case of a waiver by the Commissioner such as existed in the cases cited by appellants. In those cases and in United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619, the Commissioner was held to have waived the compliance with regulations prescribing the form in which claims, and supporting evidence, were to be presented by consideration of the claims on their merits. But here it is argued that the Commissioner waived the inadvertent error as to the year for which the carry-back deduction was being claimed. There was no indication that the Commissioner treated the claim as applying to any year other than 1944, to which the claim referred, and the finding of the trial court that 1944 was the year to which the claim was intended to apply, precludes a contrary assumption. There was no waiver.

The judgment of the trial court must be and is affirmed.